# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

**MARK A. SMITH**                                                                           **PLAINTIFF**

**VERSUS**                                              **CIVIL ACTION NO. 1:15cv216-LG-RHW**

**COMMISSIONER OF SOCIAL SECURITY**                                      **DEFENDANT**

## REPORT AND RECOMMENDATION

Counsel[1] for Plaintiff Mark A. Smith filed this action July 6, 2015, seeking judicial review of the denial of Smith's claims for disability insurance benefits and supplemental security income (SSI) payments under Titles II and XVI of the Social Security Act. In this Court, Smith challenges the finding that other jobs within his capabilities existed in significant numbers, and contends the ALJ "applied a 'pick and choose' evaluation of the evidence" and failed to properly evaluate whether Smith met or equaled Listing 12.05C.

### Facts and Procedural History

Smith filed applications for disability and SSI on May 20, 2009, alleging he had been disabled since November 1, 2008, at age 42,[2] due to COPD, problems with his back and a kidney, nerve damage in his neck, back and legs, and a learning disability. [13, p. 53, 388] The applications were denied initially in October 2009, and on reconsideration on February 22, 2010. [13, pp. 242-43; 54-62] On March 14, 2011, ALJ Charles C. Pearce conducted the first of the three hearings which have been held in this case, hearing testimony from Smith and Vocational Expert (VE) Mr. Stewart. Smith testified he last worked driving a sand and gravel truck, truck-trailer, and going back in time he had worked six months in a mechanic/tire service shop, had driven a log truck for K&J Trucking and L&S Trucking, hung vinyl siding with his cousin in

---

[1]Smith has been represented by counsel since at least August 9, 2010. [13, p. 337]

[2]Smith was born in December 1965. [13, pp. 61, 242, 243]

2003 and worked with his brother as a carpenter helper in late 1990's into 2000.  [13, pp. 195-97]

Smith testified he is disabled because he was born with scoliosis, has breathing problems

(emphysema, asthma, bronchitis), and is illiterate.  [13, pp. 198-200]  Smith stated he hurts

constantly, that he has had this pain since age 12,[3] and his prescription medications help him rest

but do not help his pain.  He was a heavy smoker from age 15 and has had breathing problems

for 10-15 years.  He testified he had not had a cigarette for three months before the hearing but

his breathing was no better, and now when he smokes one cigarette he has to take three breathing

treatments on his machine.  Smith testified he has never had a problem with alcohol, that he had

quit when he was 28-30 years old, and had never gotten drunk until Mardi Gras the previous year

when he drank a fifth of whiskey and fell off the moving fire truck on which he was riding in a

parade.[4]  [13, pp. 206-208, 217]

Smith testified that since 2006,[5] he just sits around, watching television or looking out the

window.  He goes to bed between 11p.m. and 2 a.m., rises between 6-7 a.m.  He testified he no

longer owns a car, that he stopped driving in 2006 due to numbness and pain.[6]  He stated he

could sit and stand for four to four and one-half hours, and sit a like period; his feet hurt if he

stands for an hour and he has to sit and prop them up, then get up and move around or walk

around the yard; he can climb some stairs; and can carry a gallon of milk twenty feet. [13, pp.

---

[3]Elsewhere, without stating the effect on his back pain, he testified he used to play golf, but can no longer do so.  [13, p. 212]

[4]Smith was drunk when brought to the hospital for this February 13, 2010 accident, with serum alcohol of 263, and he also tested positive for cannabinoids, though he testified he gave up marijuana when he was 16 or 17.  Chest x-ray was normal; no fracture was seen on a cervical x-ray; CT scans of the head, chest, abdomen and pelvis showed no acute abnormalities, and his lungs were clear.  [13, pp. 551-560, 211]

[5]Smith quit working in 2006; on previous claims he was found not disabled before the November 1, 2008 date of disability alleged in the instant case. [13, pp. 388, 232-239]  Dr. D'Ilio's notes of February 7, 2013, indicate this is Smith's fourth or fifth application for Social Security benefits. [13, p. 607]

[6]His drivers license was suspended in 2006 for unpaid traffic tickets.  [13, p. 166]

213-217]  Smith testified he quit school at age 19 when he was in the tenth grade due to having to repeat grades.  He does not think he could do a job sitting most of day indoors, without lifting, and involving simple tasks, "Because most jobs like that requires (*sic*) reading and writing." [13, p. 219-221]

VE Stewart testified that Smith's prior work as a truck driver is classified medium work with a skill level of 2, and his jobs as a siding installer or carpenter helper are classified as heavy work with a skill level of 4.  Asked to consider one of Smith's age and work history, who has a special education history and is illiterate,[7] who has residual functional capacity to do light work requiring only simple tasks or instructions and decisions, who can occasionally climb and balance, and can frequently stoop, kneel, crouch and crawl, Mr. Stewart testified such a person remained capable of doing jobs as a small products assembler, II, (DOT code 739.687-030), a poultry boner or cutter (DOT 525.687-066), or cafeteria attendant (DOT 311.677-010), all of which are light work with a skill level of 2.

On April 8, 2011, ALJ Pearce issued a nine-page decision concluding Smith was not disabled under the Social Security Act from November 1, 2008 through the date of the decision. [13, pp. 181-189]  Smith sought review of the decision, and by order of June 19, 2012, the Appeals Council remanded the matter to the ALJ for resolution of issues regarding Smith's mental impairments, resolution of an inconsistency with respect to limitation on his social functioning, and for further consideration and explanation of his residual functional capacity. [13, pp. 314-15]

ALJ Pearce conducted a second hearing on January 11, 2013, taking testimony from Smith and his wife. [13, pp. 154-177]  Smith testified at this hearing that he was in special

---

[7]In a disability field report of May 29, 2009, Smith stated he can read and understand English, and can write more than his name.  [13, p. 387]

education in school, did not graduate, and can read and write very little. [13, pp. 156-157]  He is 5'7" tall and weighs 115 pounds, lives with his wife and mother-in-law, and last worked driving a truck in 2006.  He testified he cannot work due to depression and COPD, both of which he has had for years, and he has problems getting along with other people.  He stated he got to the point he could no longer cope, but testified he is functioning no better since quitting work, and that the Celexa he began taking for depression in November 2012 does not help.  He has taken no other medication for depression.  Medication does help his breathing problem.  Scented things and over-exertion adversely affect his breathing and he still smokes cigarettes occasionally.  He uses his inhalers and breathing machine.  At this hearing, Smith stated his legs get numb if he rides too long, his back hurts all the time from scoliosis and it is worse in bad weather or when he sits too long (more than one and one-half hours), kneels or bends over.  He climbs no stairs, does no housework, no longer drives because he lost his license in 2006 for unpaid speeding tickets; he goes shopping with his wife on occasion, but sometimes just sits in the car.  He stated he can probably stand an hour, but his back gets stiff if he stands too long.  He feels about the same as he did at the last hearing, no better or worse.  [13, pp. 157-172]

Smith's wife of 25 years testified she has known Smith since they were children, and if someone tries to befriend him or get close to him, he backs up or pushes away.  Mrs. Smith testified he has been that way ever since she has known him.  She stated she got rid of guns in the house because he's thought of suicide.  [13, pp. 173-174]  ALJ Pearce decided to order physical and psychological consultative exams of Smith so he did not question the VE.

Robert L. Cobb, M.D., conducted the physical consultative examination on February 5, 2013, noting Smith's allegations of COPD and depression, his  history of heavy smoking since age 15, and his claims of wheezing for 10-15 years.  Smith told Dr. Cobb that with treatment he

has no problems with activities of daily living, though he does have some problems with heat in the summer.  He told Dr. Cobb he could walk only 200 feet before having to stop and catch his breath, but he has never required hospitalization for these conditions.  He reported doing fine on depression/anxiety treatment since a suicide attempt.  Smith had "no chronic, recurring joint complaints;" physical examination revealed only a few scattered expiratory wheezes, and pulmonary function studies indicated mild obstruction.  Dr. Cobb's impression was COPD, chronic tobacco abuse, and a history of depression.  [13, pp. 588-589]  Dr. Cobb's opinion was that Smith could do light work, lifting a maximum of twenty pounds, and ten pounds frequently; standing and walking seven hours in an eight-hour day, two to three hours without interruption; that sitting was not affected by his COPD; he could occasionally climb, push and pull; and should avoid dust, fumes, odors, humidity and temperature extremes.  [13, pp. 601-604]

Victor D'Ilio, Ph.D. conducted the psychological evaluation on February 7, 2013.  Smith told Dr. D'Ilio he was applying for disability benefits due to a learning disability and COPD.  He stated he was an alcoholic, drinking a lot and steadily since age 15-16, and he last drank three years ago.  He admitted using marijuana, crystal meth and cocaine, but stopped when he was a teenager.  Smith denied being in treatment for alcohol/drug abuse, and denied psychiatric treatment or taking medications to control emotional or behavioral difficulties.  Smith stated he takes care of his own hygiene and grooming.  He does no housework, just drinks coffee, takes his medication, walks and stays in his room; he avoids people because he does not want to deal with them.  He stated he was unable to work due to breathing difficulties and not wanting to be around people.  Dr. D'Ilio noted no difficulties with gait, posture, or ambulation, no unusual behaviors or mannerisms; Smith was oriented to time, place, person and situation, his speech was logical and goal directed.  Dr. D'Ilio found his mental status evaluation unremarkable.

Smith was in the borderline range of intellectual functioning, with a full scale IQ of 71, and tests suggested learning disabilities in reading and arithmetic.  Dr. D'Ilio's diagnostic impressions were reading disorder, mathematics disorder, and a history of alcohol addiction and polysubstance abuse.  The doctor stated the results of his evaluation alone "do not suggest [Smith] would be unable to perform routine or repetitive tasks, interact with coworkers, receive supervision, or maintain attention and concentration," and he found no evidence suggesting Smith's condition will change over the next twelve months.  [13, pp. 605-609]  Dr. D'Ilio's medical assessment also indicted Smith was capable of working.  [13, pp. 612]

On May 24, 2013, ALJ Pearce issued an eleven-page decision, again finding Smith not disabled as defined in the Social Security Act, for the period from November 1, 2008 through the date of the decision.  [13, pp. 142-152]  Smith again sought review.  On March 16, 2014, the Appeals Council vacated and remanded the decision because Judge Pearce had not addressed or ruled on the objections by Smith's attorney to the consultative examiners' reports or to the VE's responses to  post-hearing interrogatories posed by the ALJ.  [13, pp. 266-268]  On this remand, the matter was assigned to ALJ Lanier Williams.

On June 18, 2014, Judge Williams conducted the third hearing on Smith's case, hearing testimony from Smith and from VE Stephanie May.  [13, pp. 49-138]  At this hearing, Smith reiterated that he has not worked since 2006.  His brother who builds houses was going to hire him, but when Smith got to the job site he found it too dusty to even get out of the vehicle. Smith testified he walked around town looking for work, but could not fill out applications because he cannot read.  He felt like he could drive a tractor, but they had none with closed cabs available, and he saw no point in trying to get any other job.  He stated he wanted to work, and felt he could work, he just had certain limitations - he could not tolerate a dusty environment or

extreme heat or do any reading.  [13, pp. 65-70]  Smith testified he stopped smoking four or five months ago, and that he and his wife now live in a low-income housing one-bedroom apartment.[8]  He stated he sometimes helps his wife sweep, mop, wash dishes, and cook, but does no yard work or shopping, and does not drive since he lost his driver's license in 2006.  His only contact with the outside world is on Wednesday and Sunday when he goes to church; he was going to AA four nights a week but stated he stopped three months ago because he could no longer sit in their chairs.  He stated he had not been drinking for two years "come December."  He sits a little, walks around the block, lies down, and watches television.  Smith testified he does not know if any doctor has placed any restrictions on him physically or mentally.  [13, pp. 71-74, 78-80]

Smith stated he has taken Ambien to help him sleep, that he has a problem with his legs and cannot lie still.  Headaches also keep him from sleeping and now he is on a different sleep aid.  He naps every day from noon until 1:00 p.m or until 5:00 p.m., depending on how tired he is.  His breathing problems have been the same in the last year, but his back pain, which goes from between shoulders up to the top of his neck and from his hips down toward his ankles, is worse in intensity.  He goes to the Manna Medical Clinic every five and a half months to get medication refills, and has seen no other doctors.  [13, pp. 75-77]

VE May testified Smith's past work as a heavy truck driver is considered  medium work with a skill level of 4; a pipe fitter is heavy work with a skill level of 7.  Considering a 48-year old illiterate man with that work history, who is limited to light work, can climb no ropes, ladders, or scaffolds, but can occasionally push/pull, who must avoid a high concentration of dust, fumes, gases, or pulmonary irritants, high humidity and extreme heat/cold, who can do routine repetitive type work requiring no reading/writing, can have occasional interaction with

---

[8]Smith stated his wife has income, she receives disability benefits, as does his mother.  [13, p. 532]

the public and coworkers and take supervision at a basic level, Ms. May opined such an individual could not do the work Smith has done in the past, but could do other jobs such as a housekeeping cleaner, cafeteria attendant, or small parts assembler, all of which are light work with a skill level of 2.  [13, pp. 96-107]

On October 17, 2014, ALJ Williams issued a twenty-three page opinion finding Smith had not been under a disability as defined in the Social Security Act for the period from November 1, 2008 through the date of the decision.  [13, pp. 26-48]   On April 30, 2015, the Appeals Council denied Smith's request for review of that decision.  [13, pp. 8-11]  Smith then filed this action for judicial review of the matter.

## Standard of Review

Judicial review of a final decision of the Commissioner of Social Security is limited to determining whether substantial record evidence supports the Commissioner's factual findings, and whether such findings are reached through the application of correct legal standards.  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  The Court reviews the entire record to determine whether substantial evidence supports the Commissioner's decision.  *Villa*, 895 F.2d at 1022.  Credibility of witnesses and conflicts in the evidence are issues for resolution by the Commissioner, not the Court.  It is not the Court's prerogative to substitute its judgment for that of the Commissioner or to re-weigh the evidence.  *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007); *Harris*, 209 F.3d at 417 (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)); *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (a finding of "no substantial

evidence" is appropriate only if no credible evidentiary choices or medical findings support the decision); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

Factual findings supported by substantial record evidence are conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). The Court may reverse a decision of the Commissioner if it is based upon faulty legal analysis, but should accept the Commissioner's legal conclusions if they are within reasonable meanings of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 841-44 (1984). Absent a finding that the decision is unsupported by substantial evidence or that the Commissioner applied an incorrect legal standard, the Court must affirm the Commissioner's decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). The Commissioner's decision "is accorded great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the ... decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted).

<u>Analysis</u>

The Social Security Act defines disability as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months..." 42 U.S.C. § 423(d)(1)(A). Smith had the burden to prove a disability which precluded him from engaging in substantial gainful work. *Masterson v. v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991); *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) ("suffering of some impairment does not establish disability; a claimant is disabled only if [he] is 'incapable of engaging in *any* substantial gainful activity'").

ALJ Williams  applied the correct law for determining disability – following the five-step sequential evaluation process set out at 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Step One requires determination of whether the claimant is engaging in substantial gainful activity, *i.e.*, work that involves significant physical or mental activities and is usually done for pay or profit.  The ALJ found Smith has not engaged in such activity since November 1, 2008.

At Step Two, the ALJ determines whether the claimant has a medically determinable impairment, or combination of impairments, which meets the duration requirement and is severe, *i.e.*, which significantly limits his ability to perform basic work activities.  ALJ Williams found Smith has severe impairments of "lumbar scoliosis,[9] pulmonary disease, borderline intellectual functioning (learning disorder), dysthymia, and anxiety..."  Judge Williams found Smith's complaints of leg numbness, headaches, hip and ankle pain were not severe, and would not be expected to interfere with his ability to work.  With respect to his left leg and hip, the evidence shows he has a rod in his left leg,[10] March 2010 x-rays of the hip were unremarkable; at a February 2013 consultative examination Smith made no mention of any history of leg numbness, hip or ankle pain; and Dr. Cobb found no musculoskeletal problems on examination, and noted Smith had normal gait and was able to ambulate without assistance.  As to his ankle, July 2008 x-rays showed no abnormality of the right ankle, Dr. Moore diagnosed only erythema and tenderness.  Dr. Poothullil's examination in September 2009 showed Smith had normal gait and station and normal range of motion in his ankle joints.  Smith complained of night-time headaches to Dr. Moore on August 14, 2008, but Moore's records contain no further mention of headaches; he denied headaches to Dr. Poothullil in September 2009 and his neurologic

---

[9]A September 10, 2009 Spine scoliosis study actually reported findings of no evidence of scoliosis in the thoracic or lumbar spine.  [13, pp. 518-519]

[10]Smith had surgery of the left femur following an auto accident when he was 16. [13, p. 511]

examination was normal.  The CT scan performed following his fall from the fire truck during the 2010 Mardi Gras parade was normal; he reported no history of headaches to Dr. Cobb and had a normal neurological exam in February 2013.  [13, pp. 590-591, 582, 513, 519]

As there is no record evidence of any medical diagnosis of alcohol abuse or kidney problems after the alleged date of onset of disability, Judge Williams held the record evidence failed to show a medically determinable impairment based on substance abuse or kidney problems.  Medical evidence of record shows only a possible small renal calculus of the right kidney with no mention of any resulting impairment, and only one alcohol related incident when Smith fell from the fire truck in the 2010 Mardi Gras parade.  No record evidence shows he has ever been hospitalized or treated for alcohol abuse.  Judge Williams' findings with respect to these conditions are supported by substantial record evidence.

Step Three requires determination of whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If the impairment/combination of impairments is of such severity and meets the duration requirement, the claimant is disabled, otherwise the analysis continues to Step Four.  Judge Williams found Smith does not have an impairment or combination of impairments which meets or medically equals the severity required to meet or equal a listed impairment.  In making this finding, Judge Williams carefully examined the record evidence and concisely stated why Smith's impairments fail to meet the requirements of Listing 1.04 which deals with disorders of the spine, Listing 3.02 which deals with respiratory disorders, and Listings 12.04, 12.05 and 12.06 which deal with mental impairments.  [13, p. 34]

At Step Four of the evaluation, the ALJ determines (1) the claimant's residual functional capacity, *i.e.*, his ability to do physical and mental work activities on a sustained basis despite

limitations from his impairments, and (2) whether he can still perform the requirements of his past relevant work. If he can perform the requirements of his past relevant work, he is not disabled; if he cannot, the inquiry proceeds to the fifth and final step of the evaluation where the Commission must determine, based on the claimant's residual functional capacity, age, education and work experience, whether he can make an adjustment to other work. If he can do other work, he is not disabled. To support a finding that a claimant is not disabled at Step Five, the Commission must provide evidence demonstrating that other work which the claimant can do exists in significant numbers in the national economy. Considering all Smith's impairments including those found not severe, his symptoms to the extent they are consistent with the objective medical evidence and other evidence and opinions of record, Judge Williams determined that Smith could no longer do his prior work, but that he retained the residual functional capacity to perform light work[11] with the added restrictions stated in his hypothetical to VE May. And May identified other available light work within Smith's residual functional capacity.

The ALJ found Smith's testimony only partial credible due to his reported activities which did not square with the degree of functional limitation he claimed, and inconsistencies in his testimony and statements about his conditions to examining physicians. The undersigned finds Judge Williams accurately summarized the evidence, and adequately explained his credibility determinations in weighing the evidence.

Smith first challenges the testimony of VE May, arguing that his illiteracy makes him incapable of performing the jobs of cafeteria attendant and small parts assembler because the *Dictionary of Occupational Titles* (DOT) states they involve a General Educational

---

[11]Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," and may require "a good deal of walking or standing, or ... sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

Development (GED) reasoning level of 2.[12]  Smith contends the cafeteria attendant and small

parts assembler jobs exceed his RFC.  The undersigned is of the opinion that Smith's RFC

limiting him to routine repetitive type work requiring no reading or writing, with only occasional

interaction with the public and coworkers and supervision at a basic level, does not necessarily

conflict with a reasoning level of 2.  But even were that not the case, VE May's testimony for

any deviation from DOT job descriptions of cafeteria attendant and small parts assembler,

including her own personal knowledge of the jobs, her observation of their performance and her

discussions with managers and supervisors of workers who do those jobs.  Furthermore, "cases

either hold or intimate that a limitation to simple and repetitive tasks is consistent with a

reasoning level of 2."  *Dennis v. Colvin*, 2015 WL 382474, *5 (S.D. Mis. 2015); *Melton v.

Astrue*, 2012 WL 1004786, *3 (N.D. Miss. 2012) both citing *Gaspard v. Social Security

Administration*, 609 F.Supp.2d 607, 617 (E.D. Tex. 2009).  And the Fifth Circuit has rejected the

argument that a VE's testimony must be identical to the DOT job description.  *Carey v. Apfel*,

230 F.3d 131, 146-147 (5th Cir. 2000).  The DOT is not comprehensive; it provides "necessarily

general" job descriptions.  *Fields v. Brown*, 805 F.2d 1168, 1171 (5th Cir. 1986).

> The DOT lists maximum requirements of occupations as generally performed, not
> the range of requirements of a particular job as it is performed in specific settings.
> A VE... may be able to provide more specific information about jobs or
> occupations than the DOT.

Social Security Ruling (SSR) 00-4p, 2000 WL 1898704, *3.  The VE provided such information

in the present case.  The undersigned finds the ALJ committed no error in relying on VE May's

testimony with respect to the requirements and availability of the jobs she found Smith could do.

Smith next argues the ALJ "applied a 'pick and choose' evaluation of the evidence" and

failed to properly evaluate whether Smith met or equaled Listing 12.05(C).  In support of the

---

[12]Reasoning development required to do a job is rated on a scale of 1 (the lowest level) to 6 (the highest level).  Level 2 involves: "Apply common sense understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations.*"  Dictionary of Occupational Titles*, App. C.

"pick and choose" allegation, Smith focuses on one sentence in the ALJ's 23-page single-spaced order where the ALJ found Smith's reasons for dropping out of school (because he could not read and write, and "wasn't doing nothing") did not "necessarily indicate adaptive functioning deficits..."  Smith also complains about the ALJ's limited reference in his decision to the 2-page school records contained in the 649-page record in the case.  Smith refers to the fact that he made all Fs the two years he spent in sixth grade, but does not mention the passing grades in eighth, ninth grade and tenth grades shown by the same records.  ALJ Williams repeatedly stated he considered the entire record in making his findings, and the Court has been presented no sufficient reason to hold otherwise.  See, *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009); *Marshall v. Astrue*, 315 Fed.Appx. 757, 760 (10th Cir. 2009).

To meet the Listing of 12.05(C), which deals with intellectual disability, Smith was required to demonstrate significantly subaverage general intellectual functioning and significant deficits in adaptive functioning which were initially manifested prior to age 22.  *Randall v. Astrue*, 570 F.3d 651, 656-662 (5th Cir. 2009).  "Adaptive functioning" refers to how one learns and uses "conceptual, social, and practical skills in dealing with common life demands. It is your typical functioning at home and in the community, alone or among others."  20 C.F.R. Pt. 404, Supbpt. P, App. 1 § 1200H; *Heller v. Doe*, 509 U.S. 312, 329 (1993) (describing adaptive functioning as a person's "effectiveness in areas such as social skills, communication, and daily living skills, and how well the person meets the standards of personal independence and social responsibility expected of his ... age by his ... cultural group.")  The ALJ carefully detailed the record evidence related to Smith's claim of mental impairments – including his school records, standardized test results, and mental status examinations by three psychologists dating from 2010 through February 2013.  The record also includes Smith's own statements that he never had a mental health evaluation prior to January 2010, had no history of any inpatient mental health or outpatient services, and his testimony that he was never on any medication for any mental

condition prior to 2012.  Dr. Osborn found him "socially confident in his interactions" in 2010, and capable of work involving routine, repetitive tasks.  [13, p. 530-534]  By his own testimony, Smith was able to pass the test and obtain a commercial driver's license in 1987 [13, p. 393), and thereafter to secure and maintain employment for many years.  Working despite impairments claimed to be disabling supports the ALJ's finding of not disabled.  *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995).   Bearing in mind that Smith had the burden of proving disability, including the burden to show he met the criteria of Listing 12.05C, and mindful that this Court's duty in reviewing the Commissioner's decision is "not to reweigh the evidence, but merely to determine if there is substantial evidence in the record to support the agency's decision," [*Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) citing *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir.1980); 42 U.S.C.A. §§ 405(g), 1383(c)(3)], the undersigned finds based upon the record as a whole, that Smith failed to meet his burden.  The fact that he has some impairments does not establish disability; "a claimant is disabled only if [he] is 'incapable of engaging in *any* substantial gainful activity.'"  *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992).  The existence of an impairment neither equates to, nor requires a finding of, disability under the Act.  See *Kraemer v. Sullivan*, 885 F.2d 206, 208 (5th Cir. 1989).

## RECOMMENDATION

The undersigned finds upon consideration of the entire record of proceedings below and controlling law, that the Commissioner's final decision is supported by substantial evidence and in accord with relevant legal standards.  The undersigned therefore recommends the decision of the Commissioner be affirmed.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Under Rule 72(a)(3), *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, after service of a copy of this Report and Recommendation, each party has fourteen days to serve and file with the

Clerk any written objections to it.  Within seven days of service of objections, the opposing party

must either serve and file a response or notify the District Judge that he does not intend to

respond to the objection.  An objecting party must specifically identify the findings, conclusions,

and recommendations to which he objects; the District Court need not consider frivolous,

conclusive, or general objections.  A party who fails to file written objections to the proposed

findings, conclusions, and recommendations within fourteen (14) days of being served a copy is

barred, except upon grounds of plain error, from attacking on appeal any proposed factual

finding or legal conclusion accepted by the District Court to which he did not object.  *Douglass*

*v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Signed, this the 6th day of February, 2017.


/s/ *Robert H. Walker*

ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE